J-A23031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAL EDWARD TOMPKINS, | : | |
| | : | |
| Appellant | : | No. 680 WDA 2018 |

Appeal from the Judgment of Sentence April 4, 2018
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010178-2011

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 29, 2019**

Jamal Edward Tompkins ("Tompkins") appeals from the judgment of sentence entered following the revocation of his probation. We reverse the judgment of sentence and remand for further proceedings.

The trial court summarized the history underlying the instant appeal as follows:

> On September 10, 2011, [Tompkins,] age 21, was accompanied by two juvenile males and two juvenile females, in a vacant Baldwin Borough apartment building. One of the females was [a] Jane Doe juvenile, age 17 years, 10 months on that date, and the victim herein.
>
> The victim alleged that [Tompkins] engaged in non-consensual sexual intercourse with her. Her testimony was corroborated through DNA evidence of the victim and [Tompkins] located in the [a]partment.
>
> The incident resulted in nine (9) counts against [Tompkins], several of them first and second[-]degree felonies. The Commonwealth moved to withdraw counts one through five, as well as counts seven and eight. [Tompkins] entered guilty pleas

to count six, sexual assault, a second[-]degree felony, and count nine, corruption of minors, a first[-]degree misdemeanor.[1]

As to count six, the Commonwealth and defense had agreed upon a sentence[,] with the [c]ourt's approval[,] of a year less a day to two years less two days [of] incarceration, followed by a period of probation, to be set by the [c]ourt[,] and a required sex offender registration. The [c]ourt advised [Tompkins] that the charges he had pled guilty to would have been punishable by five years in prison for count six[,] and five years in prison for count nine, respectively. [Tompkins] was also advised that he would have to register for Megan's Law as a sex offender for life.

[Tompkins was credited for time served (seventeen months) and a detainer.] [Tompkins] was to continue his incarceration until March 26, 2013, when he would be paroled, and to undergo a period of five years [of] probation, and on count nine[,] he was given a determination of guilty without further sentencing.

By August 5, 2015, evidence was presented that [Tompkins] was an absconder, had two new counts of [] gun charges, and failed to register under Megan's Law. He was on detainer. Th[e] [c]ourt had a hearing[,] in an effort to find him an address where he could be located for compliance purposes with his probation[,] and in order to lift the detainer.

A *Gagnon I*[2] [v]iolation [h]earing was held [on] the following February 3, 2016. [Tompkins] had been detained once again and [had] no verifiable address, but was accepted into the [Justice Related Services ("JRS")] program to live at Steadfast, [and] warned to comply with all the terms of probation, which he understood. Defense counsel reminded th[e] [c]ourt that [Tompkins] would have financial difficulties paying for all of the fees, rent, food, electronic monitoring, sex offender treatment, mental health treatment and drug and alcohol treatment. Th[e] [c]ourt recognized that there is a difficulty with compliance, but

---

[1] *See* 18 Pa.C.S.A. §§ 3124.1, 6301.

[2] *See Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (holding that due process requires that a probationer be given a preliminary (*Gagnon I*) and final (*Gagnon II*) hearing prior to revoking probation).

- 2 -

that [Tompkins,] at this point[,] needed to stand up and take responsibility. He was to be electronically monitored for six months.

A ***Gagnon II*** [v]iolation [h]earing was held before th[e] [c]ourt eleven months later[,] on March 1, 2017. [Tompkins] had been released from electronic monitoring on April 20, 2016[,] due to his compliance with probation requirements. However, [Tompkins] moved to his [g]randmother's home due to recurrence of financial problems. He had stopped reporting to his probation officer after July 1, 2016. He was also found to have changed his address to transient[,] without notifying his probation officer[,] and when his [g]randmother was questioned about his whereabouts, she had not seen him for a few days. [Tompkins] could not be found at an address he'd left on the Megan's Law website[,] and failed to respond to instructions to report to or contact the probation office. He had been discharged from his behavioral and drug and alcohol programs.

Probation warrants were issued …. [Tompkins's] [p]robation [o]fficer recommended that his probation be revoked. [Tompkins's] location was unknown for many months after his last contact on July 1, 2015.

… [The trial court] imposed revocation, but allowed [Tompkins] 9 to 18 months [on] parole to [JRS's] Hollywood Show Bar, to pay rent and find employment. He was given a new term of five years [of] probation, effective March 1, 2017.

However, [Tompkins] was evicted from [JRS's] housing for non-payment of rent, then, bouncing around, chronically homeless.

Trial Court Opinion, 1/22/19, at 3-7 (footnotes added).

In January 2018, Tompkins's probation officer reported that Tompkins had incurred two charges for failing to comply with his registration requirements. On March 21, 2018, in an addendum to the January 2018 report, Tompkins's probation officer noted that these charges were withdrawn.

On April 4, 2018, after a **Gagnon I** probation violation hearing, the trial court found Tompkins to be in violation of the terms of his probation. The trial court revoked Tompkins's probation and resentenced him to five to ten years in prison. Tompkins filed a post-sentence Motion, which the trial court denied. Thereafter, Tompkins timely filed a Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Tompkins presents the following claim for our review:

> In revoking [] Tompkins'[s] probation based solely on technical violations[,] and re-sentencing him to 5-10 years' total state confinement, whether the trial court abused its discretion by failing to consider [] Tompkins'[s] rehabilitative needs and the needs of the community, as required by 42 Pa.C.S.A. § 9721(b)?

Brief for Appellant at 5.

The "[r]evocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." **Commonwealth v. Perreault**, 930 A.2d 553, 558 (Pa. Super. 2007).

When reviewing the outcome of a revocation proceeding, this Court is limited to determining the validity of the proceeding, the legality of the judgment of sentence imposed, and the discretionary aspects of sentencing. **See Commonwealth v. Cartrette**, 83 A.3d 1030, 1033-35 (explaining that notwithstanding prior decisions, this Court's scope of review on appeal from revocation sentencing can also include discretionary sentencing challenges).

Tompkins challenges the discretionary aspects of his sentence. Challenges to the discretionary aspects of sentencing do not entitle a petitioner to review as of right. *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa. Super. 2011).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Swope*, 123 A.3d 333, 337 (Pa. Super. 2015) (citation omitted).

Here, Tompkins timely filed his Notice of Appeal, and preserved his claim in a post-sentence Motion. Tompkins's appellate brief includes a Statement of Reasons relied upon for allowance of appeal, with respect to the discretionary aspects of his sentence, as required by Pa.R.A.P. 2119(f). *See* Brief for Appellant at 19-26. We therefore proceed to ascertain whether Tompkins's claim presents a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or

(2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (internal citations omitted).

Tompkins asserts that at sentencing, the trial court failed to consider his rehabilitative needs, character and personal history, in violation of 42 Pa.C.S.A. § 9721(b), when imposing its sentence. Brief for Appellant at 24. According to Tompkins, at the sentencing hearing, the trial court read a summary of two purported presentencing reports, which did not indicate what technical violations Tompkins had committed. *Id.* at 21-22. At the hearing, Tompkins's counsel pointed out that Tompkins's violations were not willful or flagrant. *Id.* at 22. Rather, they were the result of Tompkins's periods of homelessness. *Id.* Tompkins argues that the trial court improperly failed to consider his rehabilitative needs, mitigating evidence, and the needs of the community. *Id.* at 23-24.

Tompkins's claim raises a substantial question that his sentence was inconsistent with a specific provision of the Sentencing Code. *See Commonwealth v. Derry*, 150 A.3d 987, 995 (Pa. Super. 2016) (concluding that a appellant's claim that the trial court failed to consider the factors set forth at 42 Pa.C.S.A. § 9721(b) raises a substantial question). Accordingly, we will address Tompkins's substantive claim.

Tompkins argues that the trial court abused its discretion in sentencing him to 5-10 years of total state confinement, without first considering his rehabilitative needs, mitigating evidence, and the needs of the community.

Brief for Appellant at 27. Although the trial court stated that Tompkins was "totally in technical noncompliance[,]" the trial court ignored evidence where he had demonstrated compliance with the terms of his probation. *Id.* Tompkins points out that at the March 1, 2017, probation violation hearing, the probation officer testified that Tompkins had been released from electronic monitoring "due to his compliance[.]" *Id.* Further, the probation officer stated that Tompkins had done well when he stayed at Steadfast House. *Id.*

Tompkins also argues that his counsel presented mitigating evidence demonstrating that Tompkins had not willfully or flagrantly violated the terms of his probation. *Id.* at 28. According to Tompkins, his counsel presented evidence that Tompkins (1) has a history of mental illness and homelessness; (2) suffers from attention deficit hyperactivity disorder, anxiety, depression, and insomnia; (3) had not willfully failed to attend sex offender treatment "but, rather, [his residence at the time] was just very far away from the treatment program," *see id.*; (4) was evicted from Farkas House because of his financial situation; and (5) immediately turned himself in upon realizing that he had missed an appointment at the probation office. *See id.* Nevertheless, Tompkins asserts, the trial court failed to consider this evidence or his rehabilitative needs on the record, in fashioning his sentence. *Id.* at 29.

Tompkins also directs our attention to this Court's decision in *Commonwealth v. Matthews*, 486 A.2d 495 (Pa. Super. 1984). In

*Matthews*, the defendant was convicted of receiving stolen property while on probation for another offense. *Id.* at 496. The defendant argued that the trial court failed to state, on the record, its reasons for resentencing him to a term of total confinement. *Id.* at 497. This Court explained that,

> [w]hen a trial court imposes sentence following revocation of probation, it must state its reasons on the record. The reasons stated should reflect the court's consideration of the criteria of the Sentencing Code, 42 Pa.C.S.[A.] § 9701 *et seq.*, the circumstances of the offense, and the character of the offender. Although the sentencing court need not list and address each of the criteria of the Sentencing Code, **the record must reflect that the criteria were considered.**

*Matthews*, 486 A.2d at 497 (emphasis added).

In reviewing Tompkins's claim, we are cognizant that the Sentencing Code grants the trial court the authority to "revoke an order of probation upon proof of the violation of specified conditions of the probation." 42 Pa.C.S.A. § 9771(b). When revocation occurs, "the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing." *Id.* Nonetheless, the court may not impose a sentence of confinement unless it finds that (1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court. *Id.* § 9771(c).

In resentencing a defendant, section 9721(b) of the Sentencing Code provides that

the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). Further, "the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed." *Id.*

Our review discloses no evidence that Tompkins had committed additional crimes since his last probation hearing, or that Tompkins was likely to commit another crime if the trial court failed to impose a lengthy term of total confinement. Rather, the record reflects that Tompkins committed only technical violations of his probation, which were the result of his transient status and financial disadvantage. *See* N.T., 4/4/18, at 4.

Further, there is nothing of record indicating that the trial court considered the criteria set forth at section 9721(b) when it resentenced Tompkins. Rather, the trial court addressed Tompkins, stating that

the impact that you've had on the victims in this case is hard to imagine. You have been removed from electronic monitoring. You failed. You've given us bad addresses. You've been discharged from sex offender treatment and from JRS.

You have a prior robbery with a gun. You have prior thefts and drugs. You're totally in technical noncompliance; and you have no family support, apparently, available to you. For all of these reasons, I feel that you are no longer a candidate for [c]ounty supervision.

N.T., 4/4/18, at 4. Because the trial court failed to consider and state, on the record, its consideration of the factors set forth at 42 Pa.C.S.A. § 9721(b) and

9771(c), we agree with Tompkins's assessment that the trial court abused its discretion in resentencing him to total confinement of 5-10 years in prison.[3]

Consequently, we reverse Tompkins's judgment of sentence, and remand for a new resentencing hearing, so that the trial court may properly consider the factors set forth at 42 Pa.C.S.A. § 9721(b) in resentencing Tompkins.

Judgment of sentence reversed. Case remanded for further proceedings consistent with this Memorandum. Superior Court jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/29/2019

---

[3] Further, the record reflects no evidence that (1) Tompkins was convicted of another crime, (2) Tompkins's conduct makes it is likely that he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court. 42 Pa.C.S.A. § 9771(c). Thus, the prerequisites to a sentence of total confinement have not been met. **See Commonwealth v. Sierra**, 752 A.2d 910, 913 (Pa. Super. 2000) (recognizing that consideration of the appropriateness of a sentence of total confinement, upon the revocation of probation, must be examined in light of 42 Pa.C.S.A. § 9771(c)).

- 10 -